UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Flow Capital Corporation,**[1] | ) |
| | ) No. 17 CV 810 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| **BESH Holding Corporation,** *et al.*, | ) |
| | ) October 20, 2020 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Before the court are three motions filed by Plaintiff Flow Capital Corporation[1] ("FlowCap") seeking: (1) a turnover order directed at Lake Forest Bank & Trust Company, N.A. ("Lake Forest Bank") and continuation of this supplementary citation proceeding for an additional 12 months; (2) the issuance of a rule to show cause and finding of contempt against Defendant Westlake Financial Group, Inc. ("Westlake") and citation respondents Paul J. Burt ("Burt"), who is now deceased, and WL Benefits LLC ("WL Benefits"); and (3) substitution of the proper successor or representative for Burt. (R. 68; R. 69; R. 70; R. 94; R. 95.) For the following reasons, the motion for turnover order and continuation is granted, and the motions for contempt and for substitution are granted in part and denied in part without prejudice:

---

[1] On August 22, 2020, the court granted the motion for substitution of FlowCap for Plaintiff Grenville Strategic Royalty Corporation that was contemporaneously filed with the motion for turnover order and continuation. (R. 68; R. 91.)

**Background**

On May 20, 2019, the court entered judgment in favor of FlowCap and against Westlake in the amount of $1,961,083.00 plus costs. (R. 52; R. 90.) Shortly thereafter WL Benefits was formed. (R. 69, Pl.'s Mot. for Finding of Contempt ("MFC") ¶ 5.) Burt was the President and CEO of Westlake and a manager of WL Benefits. (Id. ¶ 5.) After the judgment was entered, the court issued citations to discover assets directed to Westlake, Burt, and WL Benefits (collectively "Citation Respondents"). (R. 69-2; R. 69-3; R. 69-4.) These citations were personally served on Burt on September 23, 2019, both in his individual capacity and as the responsible corporate officer and a manager of Westlake and WL Benefits, respectively. (R. 69-5.) The citations state in relevant part:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to any of the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtors, and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtors, until further order of court or termination of the proceedings. You are not required to withhold payment of any money beyond double the amount of the judgment.

(R. 69-2; R. 69-3; R. 69-4.)

In response, Citation Respondents provided documents showing that Westlake has several bank accounts at Lake Forest Bank and WL Benefits has one account at JP Morgan Chase Bank, N.A. ("Chase"). (R. 69, Pl.'s MFC ¶ 6.) Third-party citations issued to those banks then revealed records for a Westlake bank account ending in 9405 ("Westlake 9405 Account"), four other Westlake accounts

ending in 4885, 9413, 9320, and 2862 (collectively "Client Accounts"), and a WL Benefits bank account ending in 5772 ("WL Benefits 5772 Account"). (R. 69-7; R. 69-8; R. 69-9.) In an emergency motion filed on December 17, 2019, Westlake asserted that the Client Accounts were "not the property of the judgment debtor Westlake" but rather held by Westlake on behalf of clients. (R. 59, Citation Respondents' Emer. Mot. ¶ 6.) Based on Westlake's representations the court ordered the release of funds in the Client Accounts on December 20, 2019, "to be used only on behalf of the respective entities associated with the accounts." (R. 63.)

FlowCap filed its motions for turnover order and continuation and for rule to show cause and contempt in April 2020, seeking turnover of funds from the Westlake 9405 Account and arguing that the court find Citation Respondents in contempt for failing to comply with the citation's prohibition on the transfer or disposition of Westlake's assets. (R. 68, Pl.'s Mot. for Turnover Order ("MTO"); R. 69, Pl.'s MFC.) Specifically, FlowCap alleges that following the service of the citations on September 23, 2019, Burt and Westlake improperly disbursed funds from the Westlake 9405 Account, violated the court's December 2019 order concerning the Client Accounts, and fraudulently transferred assets from Westlake to WL Benefits. (R. 69, Pl.'s MFC ¶¶ 12, 23, 28.) As of April 17, 2020, the amount available for turnover from the Westlake 9405 Account is $8,367.22. (R. 68, Pl.'s MTO ¶¶ 8-9.)

Citation Respondents responded to FlowCap's motions by filing a motion to quash this supplementary proceeding, arguing that the court's May 20, 2019

3

judgment was not a final order and that the citations served upon them and the third-party citation later served on Lake Forest Bank were procedurally flawed. (R. 72, Citation Respondents' Mot. to Quash.; R. 74, Citation Respondents' Clarification.) On May 29, 2020, the court denied Citation Respondents' motion to quash but left open the issue of the citations' alleged procedural defects for this court's resolution. (R. 76.) This court entered an order on the same day directing Citation Respondents to respond to FlowCap's motions by June 5, 2020. (R. 77.)

On June 5, 2020, Citation Respondents contemporaneously filed a response to FlowCap's motions and a motion for reconsideration of their previously denied motion to quash. (R. 78, Citation Respondents' Resp.; R. 79, Citation Respondents' Mot. for Reconsideration.) In their response, Citation Respondents repeated the procedural argument from their original motion to quash. (Compare R. 72, Citation Respondents' Mot. to Quash ¶¶ 10-27 with R. 78, Citation Respondents' Resp. ¶¶ 1-18.) Namely, they argued that the citations were not properly issued by the court clerk and lack the requisite statutory warning language on the front page.

On August 18, 2020, the court denied Citation Respondents' motion for reconsideration. (R. 89.) Shortly thereafter this court entered an order rejecting Citation Respondents' procedural arguments. (R. 91.) In that order this court made clear that: (1) the citations were properly issued by the court clerk as they include the court's seal; and (2) the appearance of the statutory warning language on the second page as opposed to the first did not render the citations deficient because Citation Respondents had already responded to the citations. (Id.) Accordingly,

4

this court ordered Citation Respondents to file a substantive response to FlowCap's motions by August 28, 2020. (Id.)

Two days before the response deadline, Citation Respondents filed a suggestion of death stating that Burt died on July 5, 2020. (R. 92, Citation Respondents' Suggestion of Death.) To date, Citation Respondents have not filed a substantive response to FlowCap's motions. On September 3, 2020, FlowCap filed a supplement in support of the already-pending motions for a turnover order and rule to show cause and a separate motion to substitute Burt's successor or representative as a party in his place. (R. 93, Pl.'s Supp. Reply; R. 94, Pl.'s Mot. to Substitute Party ("MSP").) FlowCap argues that because Citation Respondents have not filed a response addressing the substantive arguments raised in its motions for turnover order and for rule to show cause, the court should grant the motions "forthwith" with the exception of the requested relief against Burt. (R. 93, Pl.'s Supp. Reply at 1-2.) In its substitution motion, FlowCap seeks an order substituting Burt's widow as a party or in the alternative compelling Citation Respondents to identify the proper successor or representative of Burt's estate. (R. 94, Pl.'s MSP ¶¶ 14-15.)

## Analysis

Federal Rule of Civil Procedure 69(a) dictates that district courts must follow the "law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008). Under the applicable Illinois law, a supplementary proceeding begins when the court clerk

5

issues a citation, which entitles the creditor to discover assets or income of the debtor, whether held by the debtor or a third party. *See* 735 ILCS 5/2-1402(a); Ill. S. Ct. R. 277(a). The judgment becomes a lien on the judgment debtor's property once the citation is served upon a party. 735 ILCS 5/2-1402(m). Further, Section 2-1402(c) provides that the court may enter appropriate orders or judgments when assets or income of the judgment debtor are discovered. *See* 735 ILCS 5/2-1402(c). Citation proceedings in Illinois "are meant to be [a] swift, cheap, [and] informal" avenue for discovery of assets of the judgment debtor in order to satisfy an unpaid judgment. *Resol. Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). In keeping with this purpose, the provisions of Section 2-1402 are to be construed liberally to "provid[e] for the discovery of a debtor's assets and income" as well as to "vest[] the courts with broad powers to compel the application of discovered assets or income to satisfy a judgment." *City of Chi. v. Air Auto Leasing Co.*, 697 N.E. 2d 788, 791 (Ill. App. Ct. 1998) (internal quotation and citation omitted).

**A.     Motion for Finding of Contempt**

Turning first to FlowCap's motion for rule to show cause and contempt, the court finds it necessary to reiterate that Citation Respondents had numerous opportunities to argue the merits of the alleged contempt. As FlowCap notes, Citation Respondents filed a motion of their own to quash this supplementary proceeding and then unsuccessfully challenged the court's denial of their motion rather than addressing the merits of FlowCap's motion. (R. 93, Pl.'s Supp. Reply at 2.) When Citation Respondents filed a response on June 5, 2020, they did not

6

address the merits of the alleged contempt but rested solely on purported procedural defects concerning the citations—a puzzling position given that they had already responded to the citations issued to them and Westlake successfully pursued an emergency motion arising out of the citation issued to Lake Forest Bank. In any event, on August 22, 2020, this court made clear that the citations were properly issued by the court clerk and satisfied the statutory purpose of providing notice.

Because Citation Respondents had ample notice of the contempt claims against them and failed to respond on the merits, there is no need to direct a rule to show cause before the substantive requested relief is considered. *See S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (noting a district court may treat a show-cause motion as a motion on the merits of contempt "when it would not violate the alleged contemnor's right to notice and an opportunity to be heard"). However, given Burt's death and the nature of the claims against him (FlowCap is seeking a monetary judgment against Burt), the court declines to grant the relief requested with respect to Burt. Once a successor or representative of Burt's estate is identified and substituted, FlowCap may pursue its claims against the estate (and/or others) in any manner consistent with the law. Therefore, this court treats FlowCap's motion as one for finding of contempt against Westlake and WL Benefits.

The court's power to hold a party in civil contempt stems from its "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d

694, 699 (7th Cir. 2001) (quotation and citation omitted). To this end, the goal of civil contempt proceedings is to compel compliance with an existing order or to compensate a party for losses sustained as a result of the contempt rather than to punish the contemnor. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-28 (1994)). The party seeking a contempt ruling must prove by clear and convincing evidence that: "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *Hyatt*, 621 F.3d at 692.

    1.    **Westlake 9405 Account**

FlowCap first argues that Westlake should be held in contempt because Westlake disbursed funds from the Westlake 9405 Account following service of the citation on September 23, 2019. Illinois law permits a citation to include a provision that prohibits the party to whom the citation is directed from transferring or otherwise disposing of the judgment debtor's nonexempt assets. 735 ILCS 5/2-1402(f)(1). The purpose of this law is to prevent the citation respondent "from transferring funds which may become due to the judgment debtor, in order to [e]nsure that the latter does not abscond with money that is due." *Cacok v. Covington Elec. Co., Inc.*, 111 F.3d 52, 54 (7th Cir. 1997) (quotation and citation

omitted). Any party who fails to obey the citation's prohibition against transfers may be sanctioned. *See* 735 ILCS 5/2-1402(f)(1); Ill. Sup. Ct. R. 277(h).

Here the citation issued by the court and personally served upon Burt, the responsible corporate officer for Westlake, set forth a clear and unequivocal order prohibiting Westlake from making or allowing any transfer or other disposition of, or interfering with, any nonexempt assets. (R. 69-2; R. 69-5.) Despite this clear prohibition, bank records for the Westlake 9405 Account show withdrawals totaling $120,555.16 after service of the citation through December 31, 2019. (R. 69-7.) Specifically, bank records show the total withdrawals for each month as follows:

| September 24 - September 30, 2019 | $5,129.94 |
|---|---|
| October 2019 | $27,148.26 |
| November 2019 | $48,336.83 |
| December 2019 | $39,940.13 |
| **Total:** | **$120,555.16** |

(Id. at 2, 14, 21, 27.) Bank records also show numerous debit card purchases, payments to streaming and gaming services, and unexplained money transfers while the citation was pending. (R. 69, Pl.'s MFC ¶¶ 13-15.) Notably, at least two wire transfers out of the Westlake 9405 Account directed funds to the WL Benefits 5772 Account at Chase. (Id. ¶ 15.) It is undisputed that none of the disbursed funds was used to satisfy the judgment. (Id. ¶ 12.)

FlowCap has established all four factors for a finding of contempt. First, the citation directed at Westlake included express language prohibiting Westlake from making or allowing any transfer or other disposition of, or interfering with, any nonexempt property, including the funds in the Westlake 9405 Account. Second,

9

the unauthorized withdrawals of more than $120,000 from the Westlake 9405 Account violated the citation. Third, the violation was significant. Fourth, there is no indication that Westlake made a reasonable or diligent effort to comply with the citation or to request an exception to the citation's prohibition against transfers. *See* 735 ILCS § 5/2-1402(f)(1) (listing exceptions). To the contrary, the uncontested evidence shows that funds were depleted and transferred from the Westlake 9405 Account in an effort to evade the citation. Thus, the court finds Westlake in contempt for violating the citation's prohibition against transfers.

As already discussed, civil contempt proceedings are intended to either compel compliance or compensate a party for losses sustained. *See Jones*, 188 F.3d at 738. In keeping with this purpose, the court orders Westlake to pay FlowCap's reasonable attorneys' fees and costs associated with bringing this motion, to be determined by the court upon the filing of a fee petition. This relief does not bar FlowCap from seeking the same from Burt's estate or his representative. The court will schedule a deadline for filing the fee petition once FlowCap's expected motions against Burt's estate or representative are resolved.

    **2.    The Client Accounts**

FlowCap also asserts that Westlake should be held in contempt because it used funds in the Client Accounts in violation of the court's December 20, 2019 order. That order released the funds "to be used only on behalf of the respective entities associated with the accounts." (R. 63.) In its emergency motion, Westlake did not identify WL Benefits as an associated entity. (See R. 59, Citation

10

Respondents' Emer. Mot.) Yet bank records show money transfers totaling $9,238.45 from the Client Accounts to the WL Benefits 5772 Account four days after the order was entered on December 24, 2019. (Compare R. 69-8, at 2, 4 with R. 69-9 at 19.) Bank records also show that the transfers depleted all of the money in the Client Accounts ending in 9413 and 9320. (R. 69-8, at 2, 4, 6, 8.) FlowCap asserts that as a contempt remedy this court should vacate the December 2019 order and enter a turnover order for any remaining funds in the Client Accounts. (R. 69, Pl.'s MFC ¶ 24.)

FlowCap has met its burden of showing that Westlake violated the court's December 20, 2019 order by clear and convincing evidence. Based on Westlake's representations in its emergency motion, nothing in the court's December 2019 order could be read to permit Westlake to transfer funds from the Client Accounts to the WL Benefits 5772 Account. To be sure, the order lifted the freeze on the Client Accounts so that Westlake could use them while the citation was pending, thereby ameliorating the need to hold client funds in other accounts. The unauthorized transfer of assets that—to use Westlake's own words—were "not the property of Westlake" was a significant violation of the court's order and Westlake failed to make reasonable and diligent efforts to comply with that order.

Moreover, the court finds it troubling that Westlake requested the release of the funds in the Client Accounts "so as to prevent irreparable harm to innocent parties" and then proceeded to deplete funds in two of the accounts a few days after the court granted its request. Though not alleged by FlowCap, Westlake's conduct

11

appears to suggest that the December 2019 order was procured by fraud on the court. *In re Golf 255, Inc.*, 652 F.3d 806, 808 (7th Cir. 2011) (observing fraud on the court is the "species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court") (quotations omitted). The court accordingly finds Westlake in contempt of court for its violation of the December 2019 order.

However, because FlowCap does not point to facts that would permit this court to turn over the funds that remain in the Client Accounts, the court declines to grant this relief at this time. Instead, the court exercises its discretion to fashion contempt remedies for violations of court orders, *see Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 663 (7th Cir. 2009), and orders Lake Forest Bank to freeze the remaining funds in the Client Accounts and not to disburse any funds without court authorization.

        **3.    Transfer of Westlake's Assets**

Lastly, FlowCap contends that Westlake and WL Benefits should be held in contempt for their collective hand in a shell game allegedly orchestrated by Burt to avoid paying the judgment amount. Specifically, FlowCap claims that after the judgment was entered Westlake's employees, general business operations, and assets were fraudulently transferred to the newly formed WL Benefits and Westlake's business continued as usual under a different name. (R. 69, Pl.'s MFC ¶ 28.) FlowCap argues that those transfers are voidable such that WL Benefit's assets are Westlake's, subject to a turnover order to satisfy the judgment against

12

Westlake. (Id. ¶ 41.) FlowCap also argues that because WL Benefits holds the assets of Westlake and is a continuation and successor company of Westlake, the court should enter a judgment against WL Benefits for the unpaid $1,961,083.00 judgment. (Id. ¶ 42.)

In supplemental proceedings to discover and to collect the assets of a judgment debtor the only relevant inquiries are: "(1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment; or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 623 (7th Cir. 2010) (citing *Star Ins. Co.*, 561 F.3d at 660-61)). Once a judgment creditor discovers assets of the debtor in the hands of a third party, the court may order the third party to deliver up those assets to satisfy the judgment. 735 ILCS 5.2-1402(c)(3); *see also Kennedy v. Four Boys Labor Serv., Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996). Federal and state courts have interpreted Illinois law to permit Uniform Fraudulent Transfer Act ("UFTA") and successor liability claims in connection with supplementary proceedings. *See Trade Sols. Inc. v. Eurovictory Sports, Inc.*, No. 97 CV 1153, 1998 WL 792486, at *6 (N.D. Ill. Nov. 9, 1998) (UFTA); *Sullivan v. Alpine Irrigation Co.*, No. 09 CV 2329, 2011 WL 1575617, *5 (N.D. Ill. April 25, 2011) (successor liability).

The imposition of successor liability is an exception to the general rule that the transfer of assets from one entity to another does not make the latter liable for the debts and liabilities of the former. *See Hoppa v. Schermerhorn & Co.*, 630

13

N.E.2d 1042, 1045 (Ill. 1994). As relevant here, liability is imposed when "the purchasing entity is merely a continuation or reincarnation of the selling corporation. In other words, the purchasing corporation maintains the same or similar management and ownership, but merely wears different clothes." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 599 (7th Cir. 2005) (internal quotations and citation omitted).

Based on the uncontested evidence in the record, the court finds that WL Benefits is a continuation and successor company of Westlake and therefore FlowCap is entitled to treat WL Benefit's assets as if they were Westlake's for purposes of satisfying the underlying judgment. In demonstrating the similarities between Westlake and WL Benefits, FlowCap points out that WL Benefits was formed a few months after the judgment was entered against Westlake. (R. 69, Pl.'s MFC ¶ 29.) Burt, as the president and CEO of Westlake and a manager of WL Benefits, controlled virtually every facet of the two entities, including their respective bank accounts. (Id. ¶ 32.) While Westlake and WL Benefits have accounts at different banks, their accounts list the same address, have the same signatory (Burt), and identify the same business income and expenses. (Id. ¶¶ 31-33.) For example, bank records for the Westlake 9405 Account and the WL Benefits 5772 Account show commission payments from The Lincoln National Life Insurance Company, Sun Life Assurance Company, and Unum Life Insurance Company of

America.[2] (Id. ¶ 33.) The records also show payroll checks issued to the same employees, rent payments to the same office, and payments to the same telecommunications provider. (Id. ¶¶ 34-35.) These facts are sufficient to show that WL Benefits represents only a "new coat" for the judgment debtor Westlake.

That WL Benefits is a mere continuation of Westlake is further evidenced by the similarities between their names. Before FlowCap filed the underlying lawsuit, Westlake rebranded itself as WL Benefits Group, Inc. (Id. ¶ 31.) WL Benefits Group was owned by Burt, and it continued the same benefits administrative services as Westlake using the same building and suite number (and, unsurprisingly, the same address on the bank accounts) and employees. (Id. ¶¶ 30-31.) Under these circumstances it would be incredibly difficulty for the customers and employees of WL Benefits Group to conceive that since at least August 2019—the month and year of WL Benefit's formation—they have been dealing with a separate entity. That is because in effect they were not.

The law governing supplementary proceedings gives courts broad authority to enter appropriate orders and judgments when assets or income of the judgment debtor are discovered. *See* 735 ILCS 5.2-1402(c); *see also Kennedy*, 664 N.E.2d at 1091; *Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.*, 600 N.E.2d 1229, 1233 (Ill. App. Ct. 1992) (noting the supplemental proceedings statute "permits the court to determine the rights of third parties"). Here FlowCap has met its burden of

---

[2] FlowCap also alleges that commission payments due to Westlake from Aetna Life Insurance Company, Blue Cross and Blue Shield of Illinois, and Symantec Corporation were deposited into the WL Benefits 5772 Account, (see R. 69, Pl.'s MFC ¶ 33), but bank records do not show deposits from these companies.

showing that WL Benefits has assets of the judgment debtor Westlake, *see Broaddus v. Shields*, No. 08 CV 4420, 2012 WL 28694, at *4 (N.D. Ill. Jan. 5, 2012), and there is overwhelming evidence showing that WL Benefits was created in a vain attempt to conceal assets of Westlake after the entry of the judgment, *see Brandon*, 419 F.3d at 600 (finding payments to individual defendants fraudulent conveyances in violation of the UFTA where the payments were intended to prevent a creditor from collecting on his claim). In keeping with the purpose of post-judgment proceedings, to be "swift, cheap, [and] informal," it makes little sense to require FlowCap to file a supplemental complaint against WL Benefits to obtain a judgment against it. For these reasons and in light of the undisputed facts, the court enters judgment in favor of FlowCap and against WL Benefits for the unpaid $1,961,083.00 judgment plus costs in accordance with the judgment against Westlake. (R. 59; R. 90.)

In sum, the court grants FlowCap's motion for contempt as to Westlake and WL Benefits and awards the following remedies: (1) Westlake and WL Benefits are ordered to pay FlowCap's reasonable attorneys' fees and costs associated with bringing the motion for contempt; (2) the funds in the Client Accounts are frozen until further order of the court; and (3) judgment is entered against WL Benefits and in favor of FlowCap in amount of $1,961,083.00 plus costs. However, the court denies FlowCap's motion for rule to show cause and for finding of contempt as to Burt individually without prejudice.

**B.     Motion for Turnover Order and Continuance**

FlowCap next seeks a turnover order compelling Lake Forest Bank to release funds in the Westlake 9408 Account to satisfy the judgment. (R. 68, Pl.'s MTO ¶ 9.) FlowCap also seeks an order continuing this supplementary proceeding as to all issued citations for 12 months. (Id. ¶ 10.) FlowCap contends that a continuation order is necessary because Citation Respondents and the banks at which they have accounts may continue to receive funds that are due to Westlake and WL Benefits and thus be subject to turnover to satisfy the judgment. (Id.) Neither Citation Respondents nor Lake Forest Bank or Chase oppose FlowCap's motion.

The law governing supplementary proceedings provides that the court may order a third party to turn over any assets so discovered to the creditor to satisfy the judgment. *See* 735 ILCS 5/2-1402(c)(3). Further, the court has discretion to extend supplementary citation proceedings "as justice may require." Ill. S. Ct. R. 277(f); *see also Laborers' Pension Fund*, 542 F.3d at 194. Accordingly, the court grants FlowCap's motion for turnover order and continuation and orders that: (1) Lake Forest Bank is ordered to turn over to FlowCap all funds held in the Westlake 9405 Account, less any applicable bank fees, by November 4, 2020; and (2) the citations served upon Citation Respondents, Lake Forest Bank, and Chase shall remain in full force and effect until October 20, 2021. To the extent that any party or third-party wishes to terminate the citation at an earlier date, they may file a motion to do so. The court also orders Chase to turn over to FlowCap all funds held

17

in the WL Benefits 5772 Account, less any applicable bank fees, by November 4, 2020.

C.   **Motion for Substitution**

FlowCap also seeks an order substituting Burt's widow as a party in Burt's place or in the alternative compelling Citation Respondents to identify the proper successor or representative of Burt's estate. (R. 94, Pl.'s MSP ¶¶ 14-15.) FlowCap contends that its fraudulent transfer claims against Burt are remedial, rather than punitive, and therefore were not extinguished upon his death. (Id. ¶¶ 8-9.) Citing *Bertam Music Co. v. P & C Enters., Inc.*, No. 09 CV 2253, 2011 WL 2633666, at *6 (C.D. Ill. July 5, 2011), FlowCap argues that Burt's widow is the proper party for substitution to defend these claims irrespective of the fact that she has not been formally appointed as a representative or administrator of Burt's estate because she is a successor in interest. (Id. ¶ 10.)

Federal Rule of Civil Procedure 25 governs the substitution of a party who has died. Specifically, Rule 25(a)(1) provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Generally, "the proper party for substitution is the person who has the legal right and authority to defend against the claims brought against the deceased party." *Bertam Music Co.*, 2011 WL 2633666, at *6. Courts in this district have broadly construed Rule 25(a)(1) to permit substitution of the decedent's successor as a party even though that person has not been formally appointed as a representative or administrator. *See Hicks v. Young*, No. 10 CV 3874, 2012 WL 1755735, at *1 (N.D.

18

Ill. May 15, 2012); *see also Bertam Music Co.*, 2011 WL 2633666, at *6. The decision whether to substitute parties lies within the sole discretion of the court. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985).

Here the court agrees with FlowCap, finding that its UFTA claims to recover judgment for the value of the assets transferred are remedial in nature and therefore survive Burt's death. *See Cannon v. Whitman Corp.*, 569 N.E.2d 1114, 1118 (Ill. App. Ct. 1991) (holding "the [UFTA] is remedial in nature and thus can be given retroactive effect"); *see also In re Randy*, 189 B.R. 425, 444 (N.D. Ill. Nov. 8, 1995) (describing fraudulent transfer laws, including the UFTA, as restitutionary); *N.L.R.B. v. Int'l Measurement & Control Co., Inc.*, 978 F.2d 334, 338 (7th Cir. 1992) ("Actions to recover fraudulent conveyances survive the preferred creditor's death."). Consequently, the court may order the substitution of the proper party in this case. *See* Fed. R. Civ. P. 25(a)(1). FlowCap contends that Citation Respondents ignored its requests for identification of Burt's surviving heirs and information concerning whether a representative has or will be appointed for his estate. (R. 94, Pl.'s MSP ¶ 11.) FlowCap also contends that it attempted to determine whether Burt died intestate or whether a petition to distribute his estate has been filed, but its efforts were futile. (Id.) Based in part on these circumstances, FlowCap argues that Burt's widow is the proper party to substitute under Rule 25.

Given that Rule 25(a)(1) permits the substitution of the decedent's successor, *see Hicks*, 2012 WL 1755735, at *1, and Burt's widow is apparently the only successor in interest that FlowCap could identify by name, the court may order that

19

she be substituted as a party. Having said that, the court finds that judicial economy is best served by compelling Citation Respondents to identify the proper successor or representative of Burt's estate. The court therefore grants FlowCap's motion for substitution in part to the extent that it seeks an order compelling the Citation Respondents to identify the proper successor or representative to be substituted in this case. As such, the Citation Respondents are to identify the proper party to replace Burt by October 27, 2020.

## Conclusion

For the foregoing reasons, the motion for turnover order and continuation is granted, and the motions for contempt and for substitution are granted in part and denied in part without prejudice.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**